24CA1553 Peo v Krob 07-02-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1553
Douglas County District Court No. 22CR1148
Honorable Natalie Stricklin, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Matthew Zick Krob,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE GROVE
Gomez and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 2, 2026

Philip J. Weiser, Attorney General, Claire V. Collins, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Haddon, Morgan, & Foreman, P.C., Jeffrey S. Pagliuca, Jacob B. McMahon, Denver, Colorado, for Defendant-Appellant

¶ 1 After two domestic incidents between defendant, Matthew Zick Krob, and his now ex-wife (the victim), a jury found Krob guilty of multiple counts of assault, sexual assault, and unlawful sexual contact, as well as one count of obstruction of telephone service. Krob appeals his judgment of conviction, arguing that the trial court reversibly erred by (1) admitting certain expert witness testimony; (2) allowing the prosecutor to ask leading questions during the direct and redirect examination of several witnesses; (3) permitting prosecutorial misconduct during closing arguments; and (4) incorrectly instructing the jury on the concept of reasonable doubt. Krob also argues that the cumulative effect of these errors requires reversal. We disagree and affirm the judgment of conviction.

## I. Background

¶ 2 Early one morning in November 2022, Douglas County police officers responded to a 911 call from the victim reporting a physical domestic dispute. Upon arriving, officers saw that the victim had blood on her clothing. She told officers that Krob had assaulted her, taken her phone, and left. Shortly after, the victim reported that Krob had also assaulted her about a year earlier.

1

¶ 3     Based on the two incidents, the prosecution ultimately charged Krob with two counts of sexual assault, two counts of unlawful sexual contact, two counts of assault, and one count of obstruction of telephone service.[1]  The victim also began divorce proceedings with Krob that were still pending at the time of the trial.

¶ 4     Krob's theory of defense at trial was that the victim had fabricated the allegations to gain an advantage in their divorce case.

¶ 5     The jury found Krob guilty of all charges.  The trial court sentenced him to twelve years to life in the custody of the Department of Corrections.

## II.    Expert Witness Testimony

¶ 6     Krob contends that the trial court erred by failing to make findings about the reliability of testimony from an allegedly unqualified expert witness.  He also argues that the expert's testimony did not fit the facts of the case and was inadmissible under CRE 403.  Though the parties dispute the extent to which Krob preserved these contentions, we see no error.

---

[1] The prosecution originally charged Krob with two counts related to an alleged third incident but later dismissed them.

## A. Additional Background

¶ 7 Before trial, the prosecution endorsed Jennifer Walker as a generalized expert witness in domestic violence. Krob moved to exclude Walker's testimony because, as relevant here, it did not adequately fit the facts of the case and Walker lacked the qualifications to testify about victim memory.

¶ 8 At a pretrial hearing, the trial court deferred ruling on the motion, stating that it would wait until it heard the victim's testimony to "determine what the parameters of [Walker's] expert opinions will be under [CRE] 401 through 403."

¶ 9 After the victim testified, Krob renewed his objections to Walker's testimony. The court broadly accepted her qualifications as an expert witness, noting that it was "not saying Ms. Walker is not qualified to talk about any of these topics." But the court did have concerns about both the scope of Walker's proposed testimony and the basis for some of the opinions that the prosecutor anticipated presenting. Thus, the court instructed the prosecutor to be cautious during his direct examination to avoid "going into details on things that are absolutely not relevant here." And, while the court precluded some testimony because it lacked "sufficient

3

backing," it found that the victim's testimony — particularly her "sequencing" and recollection of "the order of when things happened" — established that Walker's proposed testimony about "repeated trauma effects on memory retention and recollection" would be helpful to the jury. The court concluded by emphasizing once again that the testimony should be "very narrowly tailored . . . and not entering into the realm of commenting on credibility."

¶ 10 At trial, after Walker testified about her background and experience working with domestic violence victims, the court qualified her as an expert "in domestic violence [and] offender dynamics." Walker then testified about the power and control dynamics of domestic violence relationships — including economic abuse and isolation — and her experience with domestic violence victims struggling to remember the sequence of traumatic events.

¶ 11 As part of that latter topic, the prosecutor and Walker had the following exchange:

> Q. I want to ask you — kind of the last area I want to talk to you about. I want to ask this very narrowly. Have you encountered or worked with victims and survivors who, based on that abuse, have a hard time putting events

in the chronological order of how they may have happened?

A. Yes.

Q. And kind of specifically to that question, what are some of the reasons that you've spoken with victims and survivors about as to why their recollection may be A, B, C, one day, A, C, B, the next day, and so on?

A. Sure. So when a victim is traumatized — and it can be anybody that's being traumatized — when that happens, how memory kind of gets stored and understood is — it's complicated. And so we, in my understanding, and particularly working at the Crisis Center and watching individuals go through the therapeutic process and the things that therapists have said, a victim remembered this and it's significant, and you're, like, I wonder why they wouldn't have remembered that earlier. And it's just the way victims heal. It's the way they take this traumatic situation or situations and process that information.

So it's the way I think for survivors to feel — if they had to remember all of that at once that might be incredibly overwhelming and detrimental to them. So I think just the natural process is I'm going to remember things as I go along, and so that I can stay safe and process that piece of information, and then move on to the next thing that pops up.

### B.     Legal Principles and Standard of Review

¶ 12     Expert witness testimony is governed by CRE 702 and is admissible when (1) the scientific principles at issue are reasonably reliable; (2) the expert is qualified to offer the testimony; (3) the testimony is helpful to the jury; and (4) the testimony's probative value is not substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury.  *People v. Cooper*, 2021 CO 69, ¶ 47; *see* CRE 403, 702.

¶ 13     "We review a trial court's admission of expert testimony for an abuse of discretion and will reverse only when that decision is manifestly erroneous."  *Cooper*, ¶ 44 (citation omitted).

### C.     Reliability

¶ 14     Krob first asserts that the scientific principles underlying Walker's testimony were not reliable and that the trial court erred by failing to make findings on the record about their reliability.  We disagree.

¶ 15     To qualify an expert witness, a trial court must "address the testimony and make specific findings regarding its challenged admissibility."  *Kutzly v. People*, 2019 CO 55, ¶ 11.  However, "[i]f a party fails to state a specific challenge . . . a trial court may

determine that the request does not warrant [an expert witness admissibility] analysis." *People v. Rector*, 248 P.3d 1196, 1201 (Colo. 2011). And if "Colorado has already properly accepted the basis of the expert's testimony," failing to make specific findings does not rise to an abuse of discretion. *Kutzly*, ¶ 11.

¶ 16 We recognize that the trial court did not make a record about the reliability of Walker's testimony. But defense counsel's opposition to Walker's testimony focused on its ostensible lack of "fit" to the facts of the case, along with Walker's expert qualifications, and not — as Krob argues on appeal — on a theory that Walker's testimony was insufficiently supported by reliable

scientific principles.[2]  *See Rector*, 248 P.3d at 1201 ("In deciding whether a determination of admissibility requires [an expert witness admissibility analysis], a trial court must consider the issues as framed in the motion before it.").  Since a trial court is only required to make findings regarding the reliability of an expert's testimony "where a proper challenge has been raised," *Ruibal v. People*, 2018 CO 93, ¶ 13, we see no error in the trial court's failing to do so here.

¶ 17    In any event, even if Krob had challenged the reliability of Walker's testimony at trial, Colorado courts have "consistently upheld the admission of '[e]xpert testimony about the general behavior of sexual assault victims.'"  *People v. Rail*, 2016 COA 24,

---

[2] Krob's objection to Walker's testimony went no further than citing the general law for the reliability of expert testimony and made no argument why Walker's methods were unreliable.  *See Martinez v. People*, 2015 CO 16, ¶ 14.  To the extent Krob now challenges the reliability of Walker's testimony because she "assumes" the people she studies are "in fact victims of domestic violence," we reject that challenge.  Walker testified that she has over thirty years of experience working with domestic violence victims, both through the criminal justice system and through her employment at a nonprofit.  And Krob offers nothing but speculation that it is not reasonably likely that individuals who present as victims in those scenarios are not in fact real victims.  *See Kutzly v. People*, 2019 CO 55, ¶ 18 ("[T]he question is whether the testimony is reasonably reliable, so it only matters that it was reasonably likely that the suspected victims had been abused . . . .").  Thus, we see no plain error in the trial court's decision to admit her testimony.

¶ 64 (alteration in original) (citation omitted), *aff'd on other grounds*, 2019 CO 99, *and abrogated on other grounds by*, *Bock v. People*, 2024 CO 61; *see also People v. Johnson*, 74 P.3d 349, 353 (Colo. App. 2002) (describing the reliability of the principles underlying domestic violence expert testimony as "well recognized"). Therefore, we cannot conclude that the trial court reversibly erred by failing to make findings about the reliability of Walker's methods. *See Kutzly*, ¶ 11; *see also Ruibal*, ¶ 13 ("Depending upon the extent to which the reliability of the scientific principles at issue has already been determined or is not disputed at all, . . . further evidence of their reliability may not be required.").

### D.    Qualifications

¶ 18    We next reject Krob's claim that Walker was not qualified to opine as an expert regarding memory — in particular, chronological recall and sequencing among trauma victims.

¶ 19    An expert witness is not required to hold a "specific degree, training certificate, [or] accreditation." *Huntoon v. TCI Cablevision of Colo., Inc.*, 969 P.2d 681, 690 (Colo. 1998). Rather, a witness may be qualified to offer expert testimony based on any one, or more, of the five factors in Rule 702 — knowledge, skill, experience,

9

training, or education. *Id.* Indeed, experience alone is sufficient to qualify a witness as an expert. *Salcedo v. People*, 999 P.2d 833, 838 (Colo. 2000).

¶ 20 Walker testified that she had decades of education and experience working with domestic violence victims as well as teaching about domestic violence. Krob argues that this experience was insufficient to qualify Walker to "opine about memory and trauma." We need not resolve that question, however, because Walker did not offer such testimony. To the contrary, in response to the prosecution's narrow questioning, Walker went no further than briefly testifying about her personal experience with victims recalling past trauma. She did not, as Krob suggests, stray into impermissible expert testimony on the science of memory. Thus, we perceive no error in the trial court's decision to allow Walker to testify about her own experiences with victim recollection.[3]

---

[3] We are not convinced that — nor does Krob explain how — Walker's brief testimony about her experience witnessing domestic violence victims recall traumatic events even constitutes expert testimony. *See Farley v. People*, 746 P.2d 956, 958-59 (Colo. 1987) (finding that testimony that victim's confusion regarding order of events was typical of sexual assault victims was lay testimony).

¶ 21    Finally, while the trial court's double-negative qualification finding ("I'm not saying Ms. Walker is not qualified to talk about any of these topics") would have benefited from more affirmative phrasing, there is ample record support for the court's determination that Walker's experience and training were sufficient to support her qualification as an expert.  *See* CRE 702.  Thus, Krob's complaints about Walker's qualifications go to the weight of her testimony, not its admissibility.  *See People v. Lehmkuhl*, 117 P.3d 98, 104 (Colo. App. 2004) (observing that when an expert lacks certain additional qualifications within a field of expertise, such deficiency goes to the weight of the expert's testimony).  Indeed, defense counsel vigorously questioned Walker about her qualifications during both voir dire and cross-examination.  We therefore see no abuse of discretion by the trial court in qualifying Walker as an expert.

### E.    Relevance and Prejudice

¶ 22    We next consider Krob's argument that Walker's testimony about memory, isolation, and economic abuse was irrelevant and unfairly prejudicial.  We are not persuaded.

#### 1.    Relevance

¶ 23    With respect to relevance, a generalized expert's testimony is helpful if it "fits a case" by having a sufficient logical connection to the factual issues. *Cooper*, ¶ 52. But "each aspect of such testimony need not match a factual issue." *Id.* at ¶ 53.

¶ 24    Regarding the relevance of Walker's testimony about victim memory, the trial court found that the victim had difficulty during her testimony recalling specific details and the sequencing of events. Indeed, defense counsel cross-examined the victim specifically on her inability to recall certain details.

¶ 25    The court also found Walker's testimony about isolation and economic abuse relevant because — as Krob acknowledges — the victim testified that Krob would not let her interact with certain people and kept her financially dependent. Defense counsel again cross-examined her on these subjects. And a friend also testified that the victim "was not allowed to bring income in."

¶ 26    Krob characterizes the victim as being inconsistent — not struggling with recollection — and argues that Walker's testimony was thus irrelevant because the victim's claims about isolation and economic abuse were fabrications calculated to appeal to the jury. But the fact that Krob disbelieves parts of the victim's testimony

does not render Walker's expert testimony on the subject irrelevant. *See* CRE 702 (admitting expert testimony to assist the trier of fact to "determine a fact in issue"). Moreover, a generalized expert's testimony does not have to perfectly match the facts of the case. *Cooper*, ¶ 5. Because a generalized expert "seeks to inform the jury about generic concepts or principles without knowledge of the facts, it is almost inevitable that parts of such testimony will not be logically connected to the case." *Id.*; *see People v. Glasser*, 293 P.3d 68, 78 (Colo. App. 2011) (finding that expert testimony about the reactions and memories of victims was helpful where the defense attacked victim memory, sequencing, and inconsistencies in the story); *People v. Coons*, 2021 CO 70, ¶¶ 49-50 (finding that expert testimony about isolation and economic abuse fit the case because of evidence that the defendant limited who the victim could see and threatened to jeopardize her financial support and employment prospects).

### 2. Prejudice

¶ 27 Nor are we persuaded that the trial court improperly applied CRE 403 when admitting Walker's testimony. On appeal, Krob makes no effort to explain how Walker's testimony was unfairly

prejudicial, asserting instead merely that it "added no probative value." Even assuming that this argument is adequately developed, we have already explained that Walker's testimony was helpful to the jury in understanding the victim's behavior and dynamics surrounding her relationship with Krob.

¶ 28 We therefore see no error in the trial court's allowing Walker's expert testimony.

## III. Leading Questions

¶ 29 Krob contends that the trial court reversibly erred by allowing the prosecutor to ask leading questions to the victim and three other witnesses. We disagree.

### A. Legal Principles and Standard of Review

¶ 30 "A leading question is one that suggests its own answer." *People v. Stewart*, 2017 COA 99, ¶ 59 (J. Jones, J., concurring in part and dissenting in part); *see also Doumbouya v. Cnty. Ct.*, 224 P.3d 425, 429 (Colo. App. 2009) ("[A] leading question is [often] just a statement disguised as a question." (second alteration in original) (citation omitted)). Leading questions should not be used on direct examination "except as may be necessary to develop the witness's testimony." CRE 611(c).

14

¶ 31     A trial court has substantial discretion in permitting leading questions, and we will only disturb the court's ruling for clear abuse of discretion.  *People v. Gillis*, 883 P.2d 554, 561 (Colo. App. 1994).

## B.     Analysis

¶ 32     In his opening brief, Krob quotes more than thirty questions — posed by the prosecutor to the victim, a police officer, a nurse, and Walker — that he claims ran afoul of Rule 611(c).  Defense counsel objected to six of these questions contemporaneously and, at a bench conference, also raised a more general objection to the prosecutor's leading questions to the victim.

¶ 33     Krob does not analyze any of the questions individually but instead simply asserts that they were all leading.  That argument is largely undermined by the trial court's response when defense counsel raised his general objection to the prosecutor's direct examination of the victim: "I have overruled the objections to leading because I haven't found that the answer to the question is being suggested in the phrasing of the question itself.  My interpretation of [the prosecutor's] questioning has been that he is taking a prior answer and then using it as a transition."  Because

Krob fails to argue to the contrary on appeal, we cannot conclude that the trial court's determination was an abuse of discretion.

¶ 34     Krob also largely fails to explain how the trial court's decision to allow the questions at issue amounted to an abuse of its broad discretion.  Indeed, the court allowed the prosecutor substantial latitude to ask leading questions to the victim in direct response to Krob's concerns about the victim's nonresponsive answers.  Krob argues that instead of allowing leading questions, the court "should have instructed [the victim] to answer only the question posed and/or stricken her non-responsive commentary."  While that likely would have also been an acceptable approach, we will not second-guess the trial court's determination that allowing leading questions was an appropriate way to allow the prosecutor to develop the victim's testimony.  *See People v. Tallent*, 2021 CO 68, ¶ 18; CRE 611(c).

¶ 35     And because Krob provides no argument for why the prosecutor's other questions to the victim or the other witnesses constituted error, we see no grounds for reversal.  *See People v. Petschow*, 119 P.3d 495, 507 (Colo. App. 2004) (no error in allowing leading questions to "move the testimony along"); *Wills v. People*, 66

P.2d 329, 330 (Colo. 1937) (no error in allowing leading questions because of witness confusion).

## IV. Prosecutorial Misconduct

¶ 36    Krob contends that the prosecutor made improper comments during rebuttal closing argument. We are not persuaded.

### A. Legal Principles and Standard of Review

¶ 37    We apply a two-step analysis to claims of prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). We first determine "whether the prosecutor's questionable conduct was improper based on the totality of the circumstances." *Id.* If it was improper, we then determine whether the misconduct warrants reversal. *Id.*

¶ 38    Because Krob did not object to any of the prosecutor's statements, we will reverse only if any misconduct amounted to plain error. *See People v. Allgier*, 2018 COA 122, ¶ 50. "Prosecutorial misconduct in closing argument rarely constitutes plain error." *Id.* at ¶ 51.

### B. Analysis

¶ 39    Krob maintains that the prosecutor misrepresented the law and facts by arguing as follows:

> [T]his isn't like a civil court. There's no money.
> No one's winning any money. Ms. Krob — it's
> not a divorce case. This judge isn't going to
> say you get the kids, you don't get the kids,
> you get the house, you don't get the house.
> None of that. There's one person to gain. One
> person.

¶ 40 Krob claims that this comment misled the jury because the victim stood to benefit from his guilty conviction in two ways: by gaining an advantage in their marital dissolution proceedings and by potentially collecting restitution after the trial. But read in context, these statements were a fair response to defense counsel's closing argument that the victim had fabricated the allegations to gain an advantage in their divorce. *See People v. Sanders*, 2022 COA 47, ¶ 44 ("When determining whether arguments were improper, courts must 'weigh the effect of those remarks on the trial, and also take into account defense counsel's "opening salvo."'" (citations omitted)), *aff'd on other grounds*, 2024 CO 33. And undeniably, this was not a divorce case, the judge did not determine who would have custody of the children or the family home, and the jury had nothing to do with awarding money to the victim even if restitution was later requested.

¶ 41     Nor do we see how the prosecutor's comment about Krob being the only one who stood to gain from the trial "improperly conveyed the prosecutor's personal presumption of guilt."

¶ 42     Thus, the trial court did not err — let alone plainly err — by allowing the prosecutor's comments.

## V.     Jury Instructions

¶ 43     Next, Krob asserts that the trial court erred by giving the jury outdated instructions about reasonable doubt.  We disagree.

¶ 44     Before trial, the court suggested that it would use "the newer jury instructions" that had a "slight modification to the language" of the reasonable doubt instructions.  Defense counsel stated that she had "[n]o objection" to using these instructions.

¶ 45     At trial, however, the prosecution tendered the 2022 model jury instructions that omitted the following sentence added in the 2023 model instructions, "A reasonable doubt can be based on the evidence presented or the lack of evidence presented."  COLJI-Crim. E:03 (2023); *see* COLJI-Crim. E:03 (2022).  The court asked if the parties had objections to the tendered instructions, and defense counsel again said she had none.

¶ 46    Krob now argues on appeal that the trial court committed structural error by giving the jury the 2022 version of the model instructions. But divisions of this court have determined that omitting reference to "the lack of evidence" in jury instruction is not structural error. *People v. Schlehuber*, 2025 COA 50, ¶ 19; *see People v. Melara*, 2025 COA 48, ¶ 24. Because Krob gives us no reason to depart from that outcome here, we conclude that the trial court did not violate Krob's due process rights by giving the 2022 model instructions.

## VI.  Cumulative Error

¶ 47    Krob asserts that, collectively, the trial court's errors violated his right to a fair trial, entitling him to a new one. *See Howard-Walker v. People*, 2019 CO 69, ¶ 24. But cumulative error requires multiple errors resulting in cumulative prejudice. *Id.* at ¶ 25. Because we disagree that the trial court committed multiple errors, it follows that there was no cumulative error.

## VII.  Disposition

¶ 48    The judgment is affirmed.

JUDGE GOMEZ and JUDGE MOULTRIE concur.